James E. JENKINS, Executor of the Estate of Ronald L. Wilkinson, Deceased, Plaintiff,

v.

Samuel K. SKINNER, Secretary, Department of Transportation, et al., Defendants.

Civ. A. No. 91–0506–A.

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 19, 1991.

As Amended Sept. 10, 1991.

James E. Sanders, Dale Edwin Sanders, O'Donnell & Smith, Alexandria, Va., for plaintiff.

Dennis Edward Szybala, Alexandria, Va., for defendants.

## ORDER

ELLIS, District Judge.

This is an employment discrimination case under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 (the "Act"). Plaintiff, the executor of the estate of R.L. Wilkinson, claims that his decedent was the victim of employment discrimination by defendants on the basis of decedent's handicap. More specifically, decedent was employed by the Federal Aviation Administration ("FAA") as an Air Traffic Control Specialist. In the summer of 1989 while on vacation, decedent tested positive for the Human Immuno–Deficiency Virus ("HIV"). When he returned to Dulles Airport, his place of employment, decedent informed his supervisor that he was HIV positive and that his physicians had prescribed for him the drug AZT.

Plaintiff alleges that on learning of decedent's medical condition, the FAA immediately suspended the decedent's medical certificate and placed him on sick leave. Thereafter, plaintiff alleges that FAA officials made no effort to accommodate the decedent in light of his handicapping condition. They did not, for example, offer him

the option of performing administrative duties, an opportunity typically offered in the past to other air traffic controllers whose medical certificates had been temporarily or permanently suspended. Instead, according to plaintiff, the decedent was placed initially on thirty (30) days advance sick leave followed by fourteen (14) months on leave-without-pay status. During this 14–month period, the decedent allegedly suffered mental anguish and financial hardship as a result of being out of work. Plaintiff claims decedent was compelled by his dire financial straits to cash in his $100,000 life insurance policy for less than forty percent (40%) of its face value. Decedent's financial straits were somewhat alleviated when his co-workers were allowed to donate some of their leave to decedent pursuant to an FAA leave-sharing program.

Not until the end of the 14–month leave without pay period did the FAA make any effort to accommodate decedent's handicap, his HIV-positive condition. In this regard, FAA offered decedent a position as an Air Traffic Assistant, an administrative position not requiring a medical certificate. This position was located in Miami, where the decedent had moved, but it involved a lower pay grade. Notwithstanding this, decedent accepted the offer and commenced work as an Air Traffic Assistant in Miami. At the same time, decedent preserved and pursued his rights under the Act by timely filing and pursuing an administrative claim. After exhausting his administrative remedies, decedent brought this action in the federal court in the District of Columbia. The case was subsequently transferred to this District pursuant to 28 U.S.C. § 1406(a). In February 1991, decedent retired from federal service on disability. Thereafter, decedent died and his executor was properly substituted as plaintiff.

The matter came before the Court on the Secretary's Motion to Dismiss Claim for Compensatory Damages and Other Relief. Specifically, the Secretary sought the following relief:

1. Striking of plaintiff's demand for a jury trial;

2. Dismissal of plaintiff's claims for decedent's reinstatement and prospective injunctive relief as moot;

3. Dismissal of plaintiff's claims for compensatory damages as unavailable under the Act; and

4. Dismissal of plaintiff's claim for reinstatement of leave to other FAA employees who had donated leave to decedent for lack of standing.

For the reasons stated from the bench and briefly elaborated here, the Court GRANTS the Secretary's motion to dismiss to the extent noted here.

### 1. *Jury Trial*

Plaintiff seeks relief under §§ 501 and 504 of the Act, 29 U.S.C. §§ 791, 794. Neither provision grants a jury trial right. Section 501 invokes the rights, remedies, and procedures of Title VII (42 U.S.C. § 2000e, *et seq.*), while Section 504 invokes those of Title VI (29 U.S.C. § 794a(a)(1)–(2)). Neither of these titles, nor the decisions interpreting their provisions, grant a jury trial right. Indeed, the Supreme Court in *dicta* has noted that "there is no right to trial by jury in cases arising under Title VII." *Lehman v. Nakshian,* 453 U.S. 156, 163, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981). And more recently, the Ninth Circuit has found no statutory entitlement to jury trial under the Act based on an analysis of Titles VI and VII. *See Smith v. Barton,* 914 F.2d 1330, 1336–38 (9th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991). Thus, the Act itself, as well as Titles VI and VII, are silent as to the right to a jury trial. In these circumstances, entitlement to a jury becomes a Seventh Amendment issue. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 478 F.Supp. 889 (E.D.Pa.1979), *order vacated sub nom. In re Japanese Electronic Products Antitrust Litigation,* 631 F.2d 1069 (3rd Cir.1980). While some courts have found a constitutional jury trial right in private actions under the Act (*see Smith v. Barton,* 914 F.2d at 1338), no court has found such a right in a case against the government. Indeed, it is settled that where the government is involved,

no constitutional right to a jury trial exists unless that right is explicitly conferred on litigants in the statute creating the right of action. *See Galloway v. United States,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, *reh'g denied* 320 U.S. 214, 63 S.Ct. 1443, 87 L.Ed. 1851 (1943) and *Griffin v. United States Postal Service,* 635 F.Supp. 190 (N.D.Ga.1986). This follows from the well-settled principle that an action against the government is not a suit "at common law" under the Seventh Amendment because there was no right to sue the sovereign at common law. *See Washington Intern Ins. Co. v. United States,* 863 F.2d 877 (Fed.Cir. 1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). It further follows from this that courts should not find a jury trial right by implication, but should do so only on the basis of an express legislative grant. *See Jones–Hailey v. Corporation of Tennessee Valley Authority,* 660 F.Supp. 551 (E.D.Tenn.1987) (no right to a jury trial may be implied in action against the federal government). For this reason, recent decisions under the Act have consistently found no Seventh Amendment right to a jury trial. *See Smith v. Barton,* 914 F.2d at 1336. Accordingly, as plaintiff now concedes, there is neither a statutory entitlement nor a constitutional right to a jury trial in this case and plaintiff's request must therefore be stricken.

### 2. *Mootness*

■ Plaintiff's decedent died in the midst of prosecuting this suit. His death, as plaintiff now concedes, moots the claim for prospective injunctive relief prohibiting future discrimination, as well as any claim for reinstatement. *See Glanz v. Vernick,* 750 F.Supp. 39, 43 (D.Mass.1990); *see also Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969); *Jones v. Poindexter,* 903 F.2d 1006, 1009 (4th Cir.1990).

### 3. *Compensatory Damages*

■ Decisional authority on the scope of damages available under the Act is not uniform.[1] Until recently, the availability of compensatory damages under the Act was unsettled in this circuit. Now, a panel opinion by Judge Hall has made clear that "§ 504 of the Rehabilitation Act does not permit an award of compensatory damages for pain and suffering; also punitive damages are not recoverable." *Eastman v. V.P.I. and State University,* 939 F.2d 204, 208 (4th Cir.1991).

■ *Eastman* clearly forecloses and disposes of plaintiff's claims for mental anguish and suffering. Less clear, however, is the effect of the decision on plaintiff's claim for damages based on decedent's cashing in of the life insurance policy for less than its face value. *Eastman* does not directly address whether such pecuniary damages might be recoverable under the Act. Still, *Eastman's* import and rationale point persuasively to the conclusion that such damages are not recoverable under the Act. Thus, Judge Hall's analyses of Titles VI and VII led him to conclude that damages under those statutory schemes are limited to equitable relief including, but not limited to, reinstatement, back pay, and the restoration of any lost job benefits.[2] This conclusion, according to

---

1. The diversity of decisional authority on this issue is well-catalogued in *Eastman v. V.P.I. and State University,* 939 F.2d 204, 207–08 (4th Cir. 1991); *see also* Note, *Safeguarding Equality for the Handicapped: Compensatory Relief under Section 504 of the Rehabilitation Act,* 1986 Duke L.J. 197.

2. This conclusion is consistent with the language of the pertinent provision of Title VII, 42 U.S.C. § 2000e–5(g), which provides that courts in Title VII cases may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay

..., or any other equitable relief as the court deems appropriate...."

This limitation of the Title VII remedy is also consistent with settled rule in this circuit. *See Stephens v. South Atlantic Canners, Inc.,* 848 F.2d 484 (4th Cir.), *cert. denied,* 488 U.S. 996, 109 S.Ct. 564, 102 L.Ed.2d 589 (1988). ("Claimants proceeding under Title VII, which provides equitable relief, are generally limited monetarily to an award of back pay."); *see also Keller v. Prince George's County,* 827 F.2d 952, 955 (4th Cir.1987); and *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363–65 (11th Cir.1982).

Judge Hall, meant that the panel was "constrained to reject plaintiff's argument that a broad damage remedy be read into the Act." *Eastman*, 939 F.2d at 208. Thus, while it is true that the purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination," *Albemarle Paper Company v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), this purpose is limited to injuries to the victim's employment interests. The task of courts under the Act, like the courts' task under Title VII, is to make parties whole with respect to loss of income, job status or other employment benefits owing to discrimination, not to compensate job discrimination victims for any alleged pain and suffering, psychological harm or pecuniary effects beyond job benefits. This result is supported by the better reasoned decisions on this question. *See Marshburn v. Postmaster General of the United States*, 678 F.Supp. 1182, 1184–85 (D.Md.) (compensatory damages for pain and suffering not available in action by federal employee under Title VII and the Rehabilitation Act), *aff'd without opinion*, 861 F.2d 265 (4th Cir.1988); *DuVall v. Postmaster General*, 585 F.Supp. 1374, 1377 (D.D.C.1984), (both Title VII and the Rehabilitation Act call for equitable relief only), *aff'd without opinion*, 774 F.2d 510 (D.C.Cir.1985); and *Shuttleworth v. Broward County*, 649 F.Supp. 35, 38 (S.D.Fla.1986) (court held that only "equitable monetary damages, similar to those recoverable under Title VII" were recoverable under § 504 of the Rehabilitation Act); *Doe v. Southeastern University*, 732 F.Supp. 7, 10 (D.D.C.1990) (same), *appeal dismissed*, 927 F.2d 1257 (D.C.Cir. 1991); *Rhodes v. Charter Hospital*, 730 F.Supp. 1383, 1386 (S.D.Miss.1989) (same); *but cf. Shinault v. American Airlines, Inc.*, 936 F.2d 796 (5th Cir.1991) (compensatory damages for emotional distress recoverable under Air Carrier Access Act, which is patterned after § 504 of the Act). Accordingly, plaintiff's claim for pecuniary loss from the insurance policy sale fails as a matter of law and must be dismissed.

### 4. *Leave Reinstatement*

■ During his involuntary leave without pay status, decedent received substantial amounts of donated leave from fellow FAA employees. This leave donation occurred pursuant to a government program designed to allow federal employees to donate leave to fellow employees who, because of medical problems or other circumstances, do not have sufficient leave balances in their own accounts to cover a prolonged work absence. The effect of this donated leave transaction was that decedent was actually paid for much of the time he was on leave without pay and would otherwise have lost this income.

Plaintiff, as part of its request for relief, seeks an order reinstating the donated leave. Against this, the government argues that plaintiff has no standing to seek such relief because he cannot show an injury to decedent. But this argument ultimately fails as it confuses the question of standing to assert a claim with the question of the scope of a courts equitable power to fashion and order an appropriate remedy. It is true to be sure, that a plaintiff lacks standing to maintain a claim where he or she can show no injury likely to be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir.1984). It is also true that the decedent was aided, not injured, by his use of donated leave. If injury in this respect occurred, it was suffered by decedent's generous and sympathetic fellow employees. Yet, even they cannot be said to have been injured because they acted voluntarily. In any event, this line of analysis misses the point, which is that decedent plainly had standing to sue for discrimination under the Act, for if the discrimination occurred, he can plausibly allege and perhaps prove injury in terms of some lost wages and benefits. And the question whether the donated leave should be returned relates not to decedent's standing to sue under the Act, but to the nature of an appropriate remedy in the circumstances. If, as plaintiff alleges, the FAA

engaged in unlawful discrimination with respect to the decedent, it would seem unjust and inappropriate to permit the FAA to escape the full consequences of its actions simply because decedent's fellow employees acted considerately and generously. In that event, there seems little doubt that the Court would have the power to order that the donated leave program be credited the amount of leave donated to decedent or that it be returned to the donors. Whether such a remedy is appropriate in this instance cannot be determined until the Court hears the case.

Accordingly, defendant's motion to dismiss in this regard is DENIED and the final resolution of the issue is postponed until the conclusion of the trial.