Shirley A. DANIELS, individually and on behalf of others similarly situated, Plaintiff–Appellant,

v.

Carol M. BROWNER, Administrator; United States Environmental Protection Agency; American Association of Retired Persons, et. al., Defendants–Appellees.

No. 93–17225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1995.

Decided Aug. 22, 1995.

John M. True, III, The Employment Law Center, San Francisco, CA, for plaintiff-appellant.

Rory K. Little, Asst. U.S. Atty., and Suzette Leith, Asst. Regional Counsel, E.P.A., San Francisco, CA, for defendants-appellees.

Before: HUG, ALARCON, and TROTT, Circuit Judges.

HUG, Circuit Judge:

The question on appeal is whether Shirley Daniels was an "employee" of the Environmental Protection Agency ("EPA") for purposes of bringing an age discrimination suit against the federal agency under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a.

Daniels worked at the EPA as part of the Senior Environmental Employment Program ("SEE") pursuant to the Older American Community Service Employment Act of 1965 ("Older American Act"), 42 U.S.C. § 3056, and the Environmental Programs Assistance Act of 1984 ("EPAA"), 42 U.S.C. § 4368a. She sued the EPA under the ADEA, alleging that the EPA paid her less than it paid non-SEE employees for the same or substantially similar work. The district court granted summary judgment for the EPA on the ground of sovereign immunity, and Daniels appeals.

The ADEA waives the Federal Government's sovereign immunity to allow suits by "employees" of "executive agencies." The district court granted summary judgment for the EPA because it found that Congress did not intend the ADEA's waiver of sovereign immunity for executive agency employees to apply to SEE participants. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

SEE was established in 1976 as a pilot program pursuant to the Older American Act. The purpose of the Older American Act is to "foster and promote useful part-time opportunities in community service activities for unemployed low-income persons who are fifty-five years old or older and who have poor employment prospects." 42 U.S.C. § 3056(a). After a General Accounting Office ("GAO") interpretation of the Older American Act threw into doubt the statutory authority of SEE, the EPA announced it could no longer fund the program without explicit authorization from Congress. In response, Congress passed the EPAA, which authorized funding of SEE either through the agency receiving services from SEE participants, through the Older American Act, or through the Job Training Partnership Act, 29 U.S.C. § 1671.

Shirley Daniels, who is 61 years old, was a SEE participant. Through SEE, she worked at the EPA for three years, from July 10, 1989 until July 31, 1992. She worked full-time out of the EPA's San Francisco office as the Superfund Training Coordinator for EPA Region IX. She alleges that she performed exactly the same job as other Superfund Training Coordinators employed by the EPA.

Due to the disparity in her wages compared to those in comparable jobs who were not SEE participants, Daniels quit her job. She filed an administrative complaint on August 19, 1992, and received a right to sue letter from the EEOC on November 5, 1992. She filed her complaint in federal court on December 29, 1992. The EPA filed a motion for summary judgment, which the district court granted. Daniels appeals.

## STANDARD OF REVIEW

Summary judgment is reviewed *de novo. Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

## DISCUSSION

The ADEA contains an explicit waiver of sovereign immunity for certain federal "employees" and "applicants for employment."[1] This includes employees of "executive agencies." 29 U.S.C. § 633a(a). Daniels argues that the Government has waived its immunity as to her cause of action because she is an employee of a federal executive agency, the EPA.

██ But looking to the terms of the statute authorizing Daniels' position as a SEE participant (the "EPAA") and the legislative history of EPA appropriations bills, we find that Congress did not intend to waive the Government's sovereign immunity as to SEE participants such as Daniels. Congress was clear that SEE participants are not federal "employees" and, therefore, not subject to the same work restrictions to which federal employees are subject.

The SEE program is authorized by the EPAA. The EPAA authorizes grants to, and cooperative agreements with, nonprofit organizations; it does not authorize the EPA to hire individual employees:

[T]he Administrator of the Environmental Protection Agency is authorized to make grants to, or enter into cooperative agreements with, private nonprofit organizations ... to utilize the talents of older Americans in programs authorized by other provisions of law administered by the Administrator (and consistent with such provisions of law) in providing technical assistance to Federal, State, and local environmental agencies for projects of pollution prevention, abatement, and control.

42 U.S.C. § 4368a(a). Moreover, the EPAA's certification requirement makes a distinction between EPA employees and EPAA grant recipients:

Prior to awarding any grant or agreement under subsection (a) of this section, the applicable Federal, State, or local environmental agency shall certify to the Administrator that such grants or agreements will not—

(1) result in the displacement of individuals currently employed by the environmental agency concerned (including partial displacement through reduction of nonovertime hours, wages, or employment benefits);

(2) result in the employment of any individual when any other person is in a layoff status from the same or substantially equivalent job within the jurisdiction of the environmental agency concerned; or

(3) affect existing contracts for services.

42 U.S.C. § 4368a(b).

In addition, committee reports accompanying EPA appropriations bills clearly state that SEE participants are not federal employees. In 1992, Congress passed an appropriations bill to renew funding for the EPA.[2] The Senate Report to this bill states:

The Committee wishes to reemphasize that the SEE Program should not be subject to work restrictions or limitations placed on contractors and contract employees. The Committee recognizes a unique working relationship exists between the national aging nonprofit organizations and EPA in utilizing older persons to perform services to improve our environment, while enabling senior citizens to engage in purposeful activity. Consequently, the Committee reaffirms that the SEE participants

1. Section 15 of the ADEA reads:

All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.
29 U.S.C. § 633a(a).

2. Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1993, Pub.L. No. 102–389, 106 Stat. 1571 (1992).

are enrollees in a program to provide technical assistance to Federal, State, and local environmental agencies for projects of pollution prevention, abatement, and control. *SEE enrollees are not employees of either EPA or the national aging organizations which administer programs for EPA under the Environmental Programs Assistance Act.*

S.Rep. No. 356, 102d Cong., 2d Sess. 104 (1992) (emphasis added). A parallel House Report similarly states:

[T]he Committee recognizes the unique working relationship between the national aging nonprofit organizations and EPA in utilizing older persons to perform services to improve the environment. SEE participants are enrollees in a work experience program and *are not employees of either EPA or the national aging organizations* and therefore should not have to adhere to certain work restrictions or limitations.

H.R.Rep. No. 710, 102d Cong., 2d Sess. 59 (1992) (emphasis added). Nearly identical language can be found in House Committee Reports accompanying 1993 and 1994 EPA appropriations bills.[3] *See* H.R.Rep. No. 150, 103d Cong., 1st Sess. 53–54 (1993); H.R.Rep. No. 555, 103d Cong., 2d Sess. 55 (1994).

▪ The text of the EPAA, together with the committee reports to the EPA appropriations bills, clearly indicate Congress' intent to limit the explicit waiver of sovereign immunity for federal employees to sue under the ADEA. Such explicit limitations on waivers of sovereign immunity are to be "strictly observed." *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981).

▪ Daniels argues that congressional intent as to whether SEE participants are "employees" for purposes of the ADEA is not determinative. She argues that a multi-factored, common law agency test should be used to determine whether she was an EPA employee. An agency analysis may be appropriate where congressional intent to limit a preexisting waiver of sovereign immunity is

not clear. But in this case, where Congress' intent to limit its waiver of sovereign immunity is clear and unambiguous, we need not resort to an agency analysis to determine whether Daniels is an "employee" for purposes of the ADEA.

### CONCLUSION

We affirm the district court's grant of summary judgment in favor of the EPA because the clear intent of Congress in creating and funding the SEE program was to exempt its recipients from the operation of the ADEA.

**AFFIRMED.**

3. Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1994, Pub.L. No. 103–124, 107 Stat. 1275 (1993); Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1995, Pub.L. No. 103–327, 108 Stat. 2298 (1994).